IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Matthew Thomas Parkins, by and through Andrew Turner, his next of friend and Guardian ad Litem, and Matt Parkins, Individually, ) ) ) ) ) ) | |
| Plaintiffs, ) ) | C.A. No. 7:21-2641-HMH |
| vs. ) ) | **OPINION & ORDER** |
| The State of South Carolina, Henry Dargan McMaster, The Office of the Governor, Michael Leach, The South Carolina Department of Social Services, Calvin Hill, Tomekia Means, Joshua Baker, Robert Kerr, The South Carolina Department of Health and Human Services, Althea Myers, Patrick Maley, Michelle Gough Fry, The South Carolina Department of Disabilities and Special Needs, The Laurens County Disabilities and Special Needs Board, The Spartanburg Regional Health Care System, The Union Medical Center, Tonya Renee Washington, M.D., Jan Bradley, John Roe, and Jane Roe, ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. ) | |

This matter is before the court on Defendants' The Spartanburg Regional Healthcare System ("SRHS"), Union Medical Center ("UMC"),[1] Tonya Renee Washington, M.D. ("Dr. Washington"), and Jan Bradley ("Bradley") (collectively "SRHS Defendants") motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, the court grants the motion.

---

[1] The SRHS Defendants assert that SRHS and UMC are "properly and legally identified as 'Spartanburg Regional Heath Services District, Inc.'" (Mot. J. Pleadings 1, ECF No. 114.)

# I. Factual and Procedural background[2]

On February 14, 2022, the court entered an order ruling on the various motions to dismiss filed by the Defendants. (Opinion & Order, ECF No. 58.) On February 22, 2022, the court entered an Amended Opinion and Order correcting a clerical error. (Am. Opinion & Order, ECF No. 62.) The court granted the SRHS Defendants' motion to dismiss, dismissing all claims against the SRHS Defendants with the exception of the second cause of action for violation of 42 U.S.C § 1983. (Id. 46, ECF No. 62.) On February 23, 2022, the SRHS Defendants filed a motion requesting "an [o]rder clarifying or correcting an apparent oversight" in the court's February 14, 2022 Opinion and Order relating to the court's findings on Plaintiffs' § 1983 claim. (Mot. Recons. 1, ECF No. 63.)

Specifically, the SRHS Defendants argued that the court "overlooked or misapprehended the SRHS Defendants' first argument contained within its Motion to Dismiss Plaintiffs' First Amended Complaint seeking dismissal of all of Plaintiffs' causes of action" for failure to comply with the court's October 6, 2021 Order.[3] (Id. 2, ECF No. 63); (Oct. 6, 2021 Opinion & Order 3, ECF No. 27.) On March 1, 2022, the court denied the SRHS Defendants' motion to alter or amend because the motion raised additional substantive grounds that were not asserted in the motion to dismiss. (Opinion & Order 6, ECF No. 73.) However, the court noted that

---

[2] The factual background in this action is more fully set forth in the court's Amended Opinion and Order dated February 22, 2022. (Am. Opinion & Order, ECF No. 62.)

[3] The court's October 6, 2021 Order instructed Plaintiffs to file an amended complaint no more than 35 pages in length, omitting evidentiary matters and plainly stating in the first paragraph the specific defendants against whom that cause of action is asserted. (Oct. 6, 2021 Opinion & Order, ECF No. 27.)

"[n]othing in this order precludes the SRHS Defendants from filing a motion pursuant to Rule 12(c) to raise these new arguments." (Id., ECF No. 73.)

The SRHS Defendants filed the instant motion for judgment on the pleadings pursuant to Rule 12(c) on July 11, 2022. (Mot. J. Pleadings, ECF No. 114.) On August 1, 2022, Plaintiffs submitted their response in opposition. (Resp. Opp'n, ECF No. 117.) On August 8, 2022, the SRHS Defendants filed their reply. (Reply, ECF No. 118.) This matter is now ripe for consideration.

## II. DISCUSSION OF THE LAW

### A. Legal Standard[4]

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standards as a motion to dismiss under Rule 12(b)(6)." Occupy Columbia v. Haley, 738 F.3d 107, 115 (4th Cir. 2013).

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

---

[4] The court notes that both parties have presented matters outside the pleadings in their Rule 12(c) briefing and that Plaintiffs have requested that the court convert the SRHS Defendants' Rule 12(c) motion into a motion for summary judgment pursuant to Rule 12(d). (Resp. Opp'n 4 n.1, ECF No. 117.) Upon review, the court declines to convert this motion, finding that it can decide the instant motion without looking beyond the four corners of the amended complaint. See 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366 (3d ed. 2022) ("As the language of the rule suggests, federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.").

3

(2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotation marks omitted). While a complaint "does not need detailed factual allegations," pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

### B. Violation of Constitutional Rights

### 1. Section 1983 Generally

Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State" subjects any person "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. "To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law." Mills v. Greenville Cnty., 586 F. Supp. 2d 480, 485 (D.S.C. 2008) (citing West v. Atkins, 487 U.S. 42, 48 (1988)).

"Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (quoting Blum v. Yaretsky, 457 U.S. 991, 1002 (1982). However, the Fourth Circuit has identified three scenarios in which a private party may be considered a state actor for § 1983 purposes:

> (1) when there is either a sufficiently close nexus, or joint action between the state and the private party; (2) when the state has, through extensive regulation, exercised coercive power over, or provided significant encouragement to, the private actor; or (3) when the function performed by the private party has traditionally been an exclusive public function.

S.P. v. City of Tacoma Park, Md., 134 F.3d 260, 269 (4th Cir. 1998).

### 2. Monell Liability

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) (emphasis in original). Rather, municipality liability will attach only where the plaintiff can show that "the municipality cause[d] the deprivation 'through an official policy or custom.'" Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (quoting Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999)). There are four ways in which a municipality may be held liable based on a policy or custom:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

Id. (quoting Carter, 164 F.3d at 217). To establish municipal liability under the fourth category of Monell, a plaintiff must identify a "'persistent and widespread practice[] of municipal officials,' the 'duration and frequency' of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their 'deliberate indifference.'" Owens v. Baltimore City State's Attys. Off., 767 F.3d 379, 402 (4th Cir. 2014) (quoting Spell v. McDaniel, 824 F.2d 1380, 1386-91 (4th Cir. 1987)).

**III. ANALYSIS**

Plaintiffs' sole remaining claim alleged against the SRHS Defendants is a § 1983 claim. Although inartfully alleged, the court interprets Plaintiffs' amended complaint as alleging a substantive due process violation under the Fourteenth Amendment stemming from Matthew's treatment at UMC. See Youngberg v. Romeo, 457 U.S. 307, 324 (1982) (holding that civilly committed individuals "enjoy[] constitutionally protected interests in conditions of reasonable care and safety, reasonably nonrestrictive confinement conditions, and such training as may be required by these interests"). The adequacy of the allegations against each SRHS Defendant will be addressed in turn.

**A. Bradley**

The SRHS Defendants argue that Plaintiffs' § 1983 claim against Bradley should be dismissed "because Plaintiffs have failed to allege that Ms. Bradley was acting under color of state law." (Mem. Supp. J. Pleadings 3, ECF No. 114-1.) Specifically, the SRHS Defendants argue that "Bradley is not a governmental employee" and that Plaintiffs have failed to adequately allege that Bradley "willfully participated in joint unconstitutional action with state actors" as a private party. (Reply 4, 6, ECF No. 118.) In response, Plaintiffs contend that Bradley is a "governmental employee" and that, even if she is not, "there was still a 'sufficiently close nexus' between her relations with the state for purposes of Plaintiffs' Section 1983 claim that 'the challenged action' may be fairly treated as that of the State itself." (Resp. Opp'n 3, 13, ECF No. 117) (quoting Mentavlos v. Anderson, 249 F.3d 301, 314 (4th Cir. 2000)).

Plaintiffs' amended complaint contains a single reference to Bradley's employment status. (Am. Compl. ¶ 21, ECF No. 32) ("Jan Bradley was the social worker . . . responsible for

6

Matthew Parkin's [sic] case management at UMC . . . ."). Nowhere in their amended complaint have Plaintiffs alleged that Bradley was employed by SRHS or UMC. As the SRHS Defendants correctly note, the mere fact that Bradley worked on Matthew's case at UMC does not necessarily mean that is she employed by UMC or SRHS. (Reply 5, ECF No. 118.) In its February 22, 2022 Amended Opinion and Order, the court held that "there is no dispute that [Bradley] is not a government employee." (Am. Opinion & Order 36, ECF No. 62.) There is no basis in the record for the court to conclude otherwise. This leaves the issue of whether Bradley qualifies as a state actor under a "close nexus" or "joint action" theory. City of Tacoma Park, 134 F.3d at 269. However, it is unnecessary for the court to determine whether Plaintiffs have adequately alleged joint action because Plaintiffs have failed to sufficiently plead that Bradley engaged in conduct that deprived them of a constitutional right, an essential element of their § 1983 claim.

Again, although inartfully pled, Plaintiffs' allegations against Bradley concern two main contentions: (1) that she, in concert with other Defendants, "seiz[ed] and h[eld] Matthew in unconstitutional conditions" at UMC and (2) that she conspired with other defendants to illegally place Matthew at a DDSN group home called Clinton Manor without a court order.[5]

---

[5] Plaintiffs' repeated ambiguous references to "these defendants" throughout the amended complaint have made it, at best, exceedingly difficult to discern what allegations pertain to which defendants. Plaintiffs' counsel has been admonished in this case and others for failing to comply with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. (Oct. 6, 2021 Opinion & Order 3, ECF No. 27) (requiring Plaintiffs to replead their claims in accordance with the Federal Rules and characterizing the initial complaint as "overly complex" and "the opposite of short and plain"); see also Timpson ex rel. Timpson v. McMaster, 437 F. Supp. 3d 469, 474 (D.S.C. 2020) ("The Amended Complaint is barely cognizable. . . . The pleadings in this case fall short of [Rule 8's] standard, as Plaintiffs were still trying to articulate *who* they were suing and *what* they were suing about more than a year into this litigation." (emphasis in original and footnote omitted)); Estate of Valentine ex rel. Grate v. South Carolina, No. 3:18-895-JFA, 2018 WL 11383502, at *1 (D.S.C. Nov. 28, 2018) ("This

(Am. Compl. ¶¶ 79, 167, 189, ECF No. 32.)  With respect to the first contention, Plaintiffs have failed to set forth specific, plausible allegations that Bradley had any involvement in the placement of Matthew in protective custody or that she had any control over Matthew's care at UMC.  Rather, Plaintiffs allege elsewhere in their amended complaint that law enforcement was responsible for placing Matthew in protective custody and transporting him to UMC and that a DSS case manager was the one who "directed that Matthew be secluded in his room" and "prohibited any family member from visiting Matthew . . . ."  (Id. ¶¶ 36, 46, 59, ECF No. 32.)  Further, there are no plausible allegations that Bradley, a licensed baccalaureate social worker, had any authority to order the administration of psychotropic drugs to "chemically restrain[]" Matthew.  (Id. ¶ 190, ECF No. 32.)  As to the second contention, Plaintiffs have failed to set forth any facts that Bradley had the authority to make placement decisions for individuals in DSS custody.  To the contrary, Plaintiffs acknowledge in their amended complaint that the director of DDSN is statutorily "responsible for determining placement of all DDSN clients . . . ."[6]  (Id. ¶ 81, ECF No. 32); see also S.C. Code Ann. § 44-20-430 ("The director . . . has the final authority over applicant eligibility, determination, or services and admission order, subject to policies adopted by the commission.").  Finally, and perhaps most importantly, Plaintiffs

---

Court has spent a considerable amount of time reviewing the arguments contained in the memoranda in support of the motions to dismiss, plaintiff's counsels' response thereto, along with the prolix complaints involved in this action.  The Court's task has been made extremely difficult by reason of the fact that the Amended Complaint contains enormous amounts of information that is inappropriate in a traditional federal court complaint.").

   [6] The court also notes that "provider[s] of health care services" such as Bradley are prohibited from making placement decisions under the South Carolina Adult Health Care Consent Act.  S.C. Code Ann. § 44-66-30(A)(10).

8

conceded in their complaint that Matthew was never transferred to Clinton Manor. (Am. Compl. ¶ 108, ECF No. 32) ("[A] state senator . . . halted the illegal transfer . . . .")

Taking Plaintiffs' allegations as true, the court finds that Plaintiffs have failed to adequately plead that Bradley deprived them of a right secured by the Constitution or federal law. 42 U.S.C. § 1983. Accordingly, Plaintiffs' section 1983 claim against Bradley is dismissed.

### B. Dr. Washington

Plaintiffs' allegations against Dr. Washington can be summarized as follows: (1) Dr. Washington "seiz[ed] and h[eld]" Matthew in unconstitutional conditions" at UMC; (2) she conspired with other Defendants to place Matthew at Clinton Manor without a court order; and (3) she provided constitutionally deficient medical care. (Am. Compl. ¶¶ 62, 67, 79, 85, 86, 167, 170, ECF No. 32.) As an initial matter, any claims Plaintiffs have asserted against Dr. Washington arising from the first two allegations fail for the same reasons that the allegations fail against Bradley. First, it is not plausible that Dr. Washington was responsible for "seizing and holding" Matthew at UMC because Plaintiffs have alleged that law enforcement placed Matthew in protective custody and transported him to UMC and that DSS was authorized to exercise custody over Matthew pursuant to a family court order. (Id. ¶¶ 35-36, 53, ECF No. 32.) Further, Plaintiffs have alleged that a DSS case manager, and not Dr. Washington, was responsible for secluding Matthew and preventing his family from visiting him. (Id. ¶¶ 36, 46, 59, ECF No. 32.) Second, as to the allegations that Dr. Washington conspired with other Defendants to "illegally institutionalize" Matthew at Clinton Manor, Dr. Washington did not have the power to make placement decisions, and in any event, Matthew was never transported

to Clinton Manor. (Id. ¶¶ 79, 108, 113, ECF No. 32); see also S.C. Code Ann. § 44-66-30(A)(10) (prohibiting "a provider of health care services to the patient" from making placement decisions).

Plaintiffs' claim that Dr. Washington provided constitutionally inadequate medical care also fails. Involuntarily committed individuals, such as Matthew, enjoy "constitutionally protected interests in conditions of reasonable care and safety, reasonably nonrestrictive confinement conditions, and such training as may be required by these interests." Youngberg, 457 U.S. at 324. Under the Youngberg standard, "liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." Id. at 323; see also Patten v. Nichols, 274 F.3d 829, 843 (4th Cir. 2001) ("[L]iability under the due process clause cannot be imposed for mere negligence. . . ."). Courts do not determine "whether the treatment decision was the medically correct or most appropriate one." United States v. Charters, 863 F.2d 302, 313 (4th Cir. 1988). Rather, "[c]ourts must simply ensure that the 'choice in question was not a sham or otherwise illegitimate.'" Farabee v. Yaratha, 801 F. App'x 97, 103 (4th Cir. Feb. 6, 2020) (unpublished) (quoting Patten, 274 F.3d at 845). To this end, decisions by medical professionals are accorded a "presumption of validity." Charters, 863 F.2d at 313.

Construed liberally, Plaintiffs' complaint alleges that Dr. Washington violated Plaintiffs' constitutional rights by failing to monitor Matthew's adrenal condition, (Am. Compl. ¶¶ 60-62, 77-78, ECF No. 32); prescribing certain medications, such as a blood thinner, which caused Matthew pain and bruising, (Id. ¶¶ 63-65, ECF No. 32); using chemical restraints, (Id. ¶¶ 93, 96,

ECF No. 32); failing to timely notify Matthew's treating endocrinologist of his hospitalization, (Id. ¶¶ 105, 112, ECF No. 32); and leaving Matthew "nearly naked . . . in a short-sleeved t-shirt and a diaper for the convenience of staff, with his pubic hairs visible to persons passing by his door." (Id. ¶ 86, ECF No. 32). To begin, any claims relating to Dr. Washington's prescribing decisions, including the decision to "chemically restrain" Matthew, are not actionable because Plaintiffs have failed to sufficiently plead that Dr. Washington "so substantially departed from professional standards that [her] decisions can only be described as arbitrary and unprofessional." Patten, 274 F.3d at 845-46. There is nothing in the pleadings to suggest that these decisions were "*a sham or otherwise illegitimate*." Id. at 845 (emphasis in original) (quoting Romeo v. Youngberg, 644 F.2d 147, 178 (3d Cir. 1980) (en banc) (Seitz, C.J., concurring)).

      Moreover, Plaintiffs' remaining allegations – that Dr. Washington failed to monitor Matthew's adrenal condition, failed to notify his treating endocrinologist, and is somehow responsible for leaving Matthew in a "nearly naked" state during the duration of his hospitalization – are not actionable because they do not rise above the level of ordinary negligence. See Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1143 (3d Cir. 1990) ("[C]onduct amounting to no more than simple negligence cannot constitute a violation of the constitutional right to due process, regardless of whether the conduct is better characterized as nonfeasance, or misfeasance." (internal citations omitted)); cf. Estelle v. Gamble 429 U.S. 97, 107 (1976) ("[W]hether an X-ray—or additional diagnostic techniques or forms of treatment—is indicated is a classic example of a matter for medical judgment. A medical decision not to order

an X-ray, or like measures, does not represent cruel and unusual punishment. *At most it is medical malpractice . . . .*" (emphasis added)).

Accordingly, because Plaintiffs have failed to sufficiently allege a § 1983 claim against Dr. Washington, this claim is dismissed.

### C. SRHS/UMC

As to SRHS and UMC, Plaintiffs have alleged that:

Matthew was subjected to unconstitutional conditions of confinement at UMC that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like Matthew and Matt; his [sic] response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices;" and there exists an "affirmative causal link" between this inaction and the constitutional injuries suffered by the Plaintiffs.

(Am. Compl. ¶ 162, ECF No. 32.) These allegations, without more, are insufficient to survive a Rule 12(c) motion. See Iqbal, 556 U.S. at 678 (stating that a complaint must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" to survive a motion to dismiss); Green v. Obsu, No. ELH-19-2068, 2020 WL 758141, at *11 (D. Md. Feb. 13, 2020) (unpublished) ("[A] plaintiff cannot plead a plausible Monell claim simply by 'parrot[ing] the language of various legal theories without stating any facts to demonstrate that type of conduct.'" (quoting Cook v. Howard, 484 F. App'x 805, 811 (4th Cir. Aug. 24, 2012) (unpublished)).

Although Monell does not impose a heightened pleading standard, Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993), Plaintiffs must still satisfy Rule 8(a)'s "short and plain statement" requirement by "adequately plead[ing] . . . the existence of an official policy or custom that is fairly attributable to the municipality and that

proximately caused the deprivation of their rights," Jordan by Jordan v. Jackson, 15 F.3d 333, 338 (4th Cir. 1994).  Here, Plaintiffs have failed to identify a specific custom or policy of SRHS or UMC and describe how it operated to deprive them of a constitutional right.  In addition, Plaintiffs have failed to adequately allege a "persistent and widespread practice" of denying patients in DSS protective custody adequate medical care such that SRHS or UMC could be held liable.  Owens, 767 F.3d at 402.

In their response to the SRHS Defendant's motion to dismiss, Plaintiffs argue that because "Dr. Washington and Jan Bradley were sued in both their individual and official capacities," they have properly "alleg[ed] liability of UMC and SRHCS."  (Resp. Opp'n 28, ECF No. 117.)  However, the Supreme Court explicitly rejected respondeat superior as a basis for § 1983 liability in Monell.  Monell, 436 U.S. at 691.  Accordingly, Plaintiffs' § 1983 claim against SRHS and UMC is dismissed.

For the foregoing reasons, it is

**ORDERED** that the SRHS Defendants' motion for judgment on the pleadings, docket number 114, is granted.[7]

**IT IS SO ORDERED.**

s/ Henry M. Herlong, Jr.<br>Senior United States District Judge

Greenville, South Carolina
August 24, 2022

---

[7] In moving for judgment on the pleadings, the SRHS Defendants argue that Plaintiffs have failed to "make any allegations against John Roe and Jane Roe employees of SRHS or UMC in their § 1983 claim." (Mem. Supp. J. Pleadings 8, ECF No. 114-1.) Plaintiffs did not address this argument in their response. As a result, Plaintiffs have conceded this point, and their § 1983 claim as to Defendants John Roe and Jane Roe is also dismissed. See J.R. v. Walgreens Boots All., Inc., 470 F. Supp. 3d 534, 550 (D.S.C. 2020) ("[F]ailure to address a claim in an opposition memorandum constitutes waiver of that claim." (citing Jones v. Family Health Ctrs., Inc., 323 F. Supp. 2d 681, 690 (D.S.C. 2003))); Campbell v. Rite Aid Corp., No. 7:13–cv–02638–BHH, 2014 WL 3868008, at *2 (D.S.C. Aug. 5, 2014) ("Plaintiff failed to respond to Rite Aid's argument regarding causes of action 1 and 2, and the Court can only assume that Plaintiff concedes the argument.").